# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

ALICIA BUTLER,

    Plaintiff,

v.

THE GEORGIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

CIVIL ACTION NO.: 6:18-cv-170

FILED
Scott L. Poff, Clerk
United States District Court

*By jburrell at 2:56 pm, Dec 21, 2018*

## **ORDER**

Plaintiff Alicia Butler filed this case in the Superior Court of Tattnall County, seeking damages for injuries she sustained while working as a nurse at Georgia State Prison.[1] (Doc. 1-1.) Defendants removed the case to this Court. (Doc. 1.) Presently before the Court are Defendants' Motions for Judgment on the Pleadings. (Docs. 4, 7.) The Georgia Department of Corrections, the Board of Regents of the University System of Georgia, Georgia Correctional Healthcare, Georgia State Prison, and Georgia Department of Behavioral Health and Developmental Disabilities filed the first motion, (doc. 4), and Marty Allen, individually and as the Warden of Georgia State Prison, Stanley Williams, and Timothy Ward, filed the second, (doc. 7). Plaintiff filed responses in opposition, (docs. 8, 11), and Defendants filed replies, (docs. 13, 16). For the reasons set forth herein, the Court **GRANTS** both Motions, (docs. 4, 7),

---

[1] Plaintiff also named John Does 1–10 as Defendants in her Complaint. (Doc. 1-1.) These "unknown individuals and/or groups of individuals or companies responsible for the security and/or safety" of Georgia State Prison are necessarily state agencies or state employees in their official and individual capacities—the same as the identified Defendants. Accordingly, the holdings discussed infra apply with equal force to John Does 1–10.

and **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND

Plaintiff Alicia Butler (at times, "Ms. Butler") filed this action in May of 2018 against the Georgia Department of Corrections, the Board of Regents of the University System of Georgia, Georgia Correctional Healthcare, Georgia State Prison, and Georgia Department of Behavioral Health and Developmental Disabilities (collectively, the "State Agency Defendants"), Stanley Williams, Timothy Ward, and Marty Allen,[2] requesting relief under Georgia law and 42 U.S.C. § 1983 for injuries sustained while she was working as a nurse at Georgia State Prison. (Doc. 1-1, p. 4.) On June 5, 2016, an unsupervised and unrestrained inmate entered the "pill room" where Ms. Butler was working by herself. (Doc. 11, pp. 1–2.) The inmate attacked Plaintiff, pulled down her tights, and urinated on her. (Id.) Ms. Butler was unconscious when she was eventually discovered by a corrections officer in the pill room. (Id.) Georgia Department of Corrections policy requires four nurses and five security officers to be on duty in the medical area, but on the day of the attack, the area was staffed by one security officer and two other nurses. (Doc. 1-1, pp. 9–10.)

Ms. Butler seeks damages for the injuries caused by this attack. In Count I of her Complaint, she argues that Defendants are liable for negligence because they failed to provide adequate security, staffing, and supervision of inmates, resulting in her assault.[3] (Doc. 1-1, pp.

---

[2] Mr. Allen was the Warden of Georgia State Prison, and Mr. Williams and Mr. Ward were officers with the prison and the Georgia Department of Corrections. (Doc. 1-1, p. 13.)

[3] It is unclear whether Plaintiff intended Count I to be asserted only against the State Agency Defendants or all Defendants. The first substantive paragraph within this Count specifically lists out the State Agency Defendants and alleges they owed Plaintiff a specific duty of care, while the remaining seven paragraphs of the Count allege that duties were owed and breached by "Defendants" generally. (Doc. 1-1.) The Court, construing the allegations in Plaintiff's favor, interprets Count I as being asserted against

11–12.) In Count II of her Complaint, Plaintiff claims that Defendants Williams and Ward, "acting under color of law as officers of the Georgia Department of Corrections and Georgia State Prison, created the very danger that led to [her] injuries, by allowing [the inmate] access to [the] medical area without any supervision by a single correctional officer and without constraint of handcuffs, leg cuffs, or physically restrained in any way." (Doc. 1-1, pp. 12–13.) She alleges that, as a result of this conduct by Defendants Williams and Ward, "Defendants[4] deprived [her] of her rights, privileges and immunities under the laws and the Constitution of the United States." (Id. at pp. 13–14.) Plaintiff also asserts claims against all Defendants for punitive damages (Count III) and expenses of litigation pursuant to O.C.G.A. § 13-6-11 (Count IV).

Defendants filed two separate motions for judgment on the pleadings. (Docs. 4, 7.) In the first motion, the State Agency Defendants argue Plaintiff's claims against them are barred by sovereign immunity. (Doc. 4-1, p. 3.) In the other motion, Defendants Williams, Ward and Allen (collectively, the "Employee Defendants") aver the claims against them in their official capacities are prohibited by the 11th Amendment and that qualified immunity precludes suit against them as individuals. (Doc. 7-1, p. 4, 11.) They also maintain that Plaintiff has not alleged facts that would amount to a constitutional violation. (Id. at p. 11.) Additionally, Defendant Allen moves for judgment on the pleadings because there are no specific allegations against him in the body of the Complaint. (Id. at p. 2.)

---

all Defendants. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) ("In determining whether a party is entitled to judgment on the pleadings, [the court accepts] as true all material facts alleged in the non-moving party's pleading, and [the court views] those facts in the light most favorable to the non-moving party.").

[4] Just as in Count I, Plaintiff begins Count II by making allegations regarding particular Defendants (here, Williams and Ward), but proceeds in the remaining paragraphs of the Count to make allegations regarding "Defendants" in general. The Court, construing the allegations in Plaintiff's favor, interprets Count II as being asserted against all Defendants. See Perez, 774 F.3d at 1335.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A judgment on the pleadings is appropriate only "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1300 (11th Cir. 2001). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." Perez, 774 F.3d at 1335 (citation omitted).

The legal standards governing Rule 12(c) are identical to those governing Rule 12(b)(6) motions to dismiss and require a court to assess the same question: whether the complaint has stated a claim for relief. Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008). The Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." Cannon, 250 F.3d at 1301 (citing Mergens v. Dreyfoos, 166 F.3d 1114, 1116–17 (11th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Id. "The complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a 'speculative level,' if they do not, the plaintiff's complaint should be dismissed." See Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007) (citing Twombly, 550 U.S. at 555, 569 n.14).

**DISCUSSION**

**I.  Negligence**

Defendants seek judgment on the pleadings on Plaintiff's negligence claim, arguing they are entitled to sovereign immunity. (Doc. 4.)  Plaintiff urges that Defendants' immunity has been waived by the Georgia Tort Claims Act ("GTCA").  (Doc. 8.)  While it is not entirely clear whether Plaintiff intended to assert her claim for negligence against all Defendants or only the State Agency Defendants, the Court construes the Complaint in the light most favorable to Plaintiff and thus addresses the claim as if it was asserted against all Defendants. Accordingly, the Court must address the effect of immunity principles and the GTCA on each category of Defendants.

**A.  The State Agency Defendants**

Under the Eleventh Amendment, states and arms of the state are immune from suit without their consent. Ga. Ports Auth. v. Lawyer, No. S17G1951, --- S.E.2d ---, 2018 WL 5668518, at *5 (Ga. 2018). "[A]bsent a waiver of Eleventh Amendment immunity by the state or a valid abrogation by Congress, the Court lacks subject-matter jurisdiction to entertain the claim . . . ." McCall v. Dep't of Human Res., 176 F. Supp. 2d 1355, 1361 (M.D. Ga. 2001). The Georgia Constitution likewise extends sovereign immunity to the state's departments and agencies and explicitly provides that this immunity can only be waived by an act of legislation. Ga. Const. art. I, § II, para. IX(e).  The Georgia Constitution allows the Georgia General

5

Assembly to waive the state's sovereign immunity by enacting a State Tort Claims Act. Ga. Const. art. I, § II, para. IX(a).

Pursuant to that power, the General Assembly enacted the Georgia Tort Claims Act ("GTCA"), O.C.G.A. §§ 50-21-20 to -37, which waives "sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." Notably, however, the GTCA includes statutorily-enumerated exceptions to this waiver. O.C.G.A. § 50-21-23(a). <u>See also</u> O.C.G.A. § 50-21-24 (providing 13 categories of exceptions). One such exception is the "assault and battery" exception, which retains immunity "for losses resulting from" assault or battery. O.C.G.A. § 50-21-24(7). The parties disagree over whether this exception applies to the case at hand. (Doc. 8 at pp. 5–8.)

The assault and battery exception "is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein." <u>Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd.</u>. 545 S.E.2d 875, 878 (Ga. 2001). Therefore, in determining whether the assault and battery exception applies, "the focus is not on the government action taken or the duty allegedly breached by the government, but on the act causing the underlying loss," regardless of who committed the act. <u>Chin Pak v. Ga. Dep't of Behavioral Health & Developmental Disabilities</u>, 731 S.E.2d 384, 385 (Ga. Ct. App. 2012) (citation omitted) (finding the assault and battery exception applied to a state agency that was allegedly negligent in discharging a woman from its psychiatric facility who then lit her mother on fire).

In <u>Youngblood</u>, the plaintiff sued a state entity for negligence after her mentally disabled daughter was assaulted while living in a residential home sponsored by the state entity. 545 S.E.2d at 876. The Supreme Court of Georgia found that because the act causing Plaintiff's

6

loss—the beating of her daughter—constituted battery, "the exception in O.C.G.A. § 50-21-24(7) to the waiver of sovereign immunity applie[d]," and the state entity was immune from suit for any alleged negligence that may have occurred prior to the loss. Id. at 878.

Ms. Butler argues that the State Agency Defendants' negligent staffing was the "direct and proximate cause" of her injuries, (doc. 8, pp. 6–8), but this assertion misses the mark. Here, just as in Youngblood, the acts causing the underlying loss—the attack and attempted rape of Ms. Butler—constitute assault and battery, and the exception in O.C.G.A. § 50-21-24(7) necessarily applies.[5] See, e.g., Southerland v. Ga. Dep't of Corr., 666 S.E.2d 383, 385 (Ga. Ct. App. 2008) (finding a state agency was entitled to sovereign immunity where a prison failed to follow housing procedures and an inmate was murdered by his cell-mate). The Defendants' purported failure to properly staff the medical area "produced no loss to [Ms. Butler]; it was the [prisoner's] independent tort, one specific in O.C.G.A. § 50-21-24(7), that resulted in [Ms. Butler's] injury and damages." Dept. of Human Resources v. Hutchinson, 456 S.E.2d 642, 72 (Ga. Ct. App. 1995); Strozier v. Butts, No. 6:15-CV-34, 2015 WL 9948813, at *5 (S.D. Ga. Dec. 16, 2015), report and recommendation adopted, No. 6:15-CV-34, 2016 WL 410034 (S.D. Ga. Feb. 2, 2016) (dismissing inmate's state law claims against prison officials base on attack by fellow inmate, "even though the assault and battery was inflicted by someone other than the state officer or employee, because the act causing the underlying loss constituted a battery (i.e., the beating of the decedent by a fellow inmate), O.C.G.A. § 50–21–24(7)'s exception to the waiver of sovereign immunity applied.") (citing Sutherland). Cf. Bryant v. Harris County, No. 4:18-CV-106 (CDL), 2018 WL 5316359, at *9 (M.D. Ga. 2018) (finding the assault and battery

---

[5] In the alternative, Plaintiff argues Defendants' conduct was an "additional cause," meaning fault can be apportioned between Defendants and the acts of the prisoner. (Doc. 8, pp. 6–8.) The Georgia Court of Appeals rejected a similar argument in Chin Pak; the plaintiff urged that where more than one act caused an injury, the state entity could be held liable for any acts not protected by sovereign immunity. 731 S.E.2d at 386 n.10 (distinguishing Ga. Dept. of Transp. v. Heller, 674 S.E.2d 914 (2009)).

7

exception inapplicable when plaintiff claimed that decedent's death resulted in part from the state agency's failure to provide prompt medical treatment after decedent was assaulted).

Ms. Butler's attempts to distinguish this case from Youngblood and its progeny are non-sequitur. This case falls squarely in line with the facts and reasoning of Youngblood and multiple other Georgia appellate decisions cited throughout this opinion. Even accepting as true that the State Agency Defendants were negligent, they cannot be held liable under the law. While this may seem unjust,

> [s]overeign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity—it is the state declaring that it cannot be sued even where it would otherwise be liable. Nevertheless, it is a constitutionally recognized doctrine, and the constitution expressly provides that immunity for tort claims can be waived only be a legislative act specifically providing for such waiver and setting forth the extent thereof.

Chin Pak, 731 S.E.2d at 386–87. The State Agency Defendants are accordingly entitled to sovereign immunity from the state law negligence claim, Count I, and judgment must be entered in their favor.

### B. Employee Defendants

#### (1) Official Capacities

"Eleventh Amendment immunity [] extends to a state official or employee sued in an official capacity as well as to other entities properly described as 'arms of the state.'" Powell v. Dept. of Human Res., 918 F. Supp. 1575, 1578 (S.D. Ga. 1996). The GTCA further provides that state officers and employees are not subject to suit or liability for torts committed while acting within the scope of their official duties. O.C.G.A. § 50-21-25(a). According to the Complaint, Mr. Allen was the Warden of Georgia State Prison, and Mr. Williams and Mr. Ward were officers with the prison and the Georgia Department of Corrections, (doc. 1-1, p. 13), and cannot be held liable in their official capacities for Plaintiff's GTCA claim.

### **(2) Individual Capacities**

As noted above, state officers are not subject to suit for torts committed while acting within the scope of their official duties. O.C.G.A. § 50–21–25(a). This includes an officer in his or her individual capacity. Id. Should a plaintiff wish to hold a party accountable for such conduct, "the plaintiff must name the government entity for which the state official was acting and shall not name the state official individually." McCall v. Dep't of Human Res., 176 F. Supp. 1355, 1362 (M.D. Ga. 2001) (citing O.C.G.A. § 50–21–25(b)). Plaintiff does not allege that Williams, Ward, and Allen acted outside of the scope of their official duties, and, therefore, they cannot be sued in their individual capacities under the GTCA.

In light of the foregoing, Defendants Williams, Ward and Allen are entitled to judgment in their favor on Count I of Plaintiff's Complaint.

## II. 42 U.S.C § 1983

Plaintiff's § 1983 claim alleges that Employee Defendants Williams and Ward,[6] acting as officers of the Department of Corrections and the Georgia State Prison, allowed the inmate access to the medical area without supervision and without physical restraints, and as a result, "Defendants deprived [her] of her rights, privileges and immunities under the Constitution of the United States." (Doc. 1-1, p. 13.) Given Plaintiff's use of the general term "Defendants" (particularly after specifically listing Defendants Williams and Ward), it is not clear that Plaintiff intended Count II to be alleged solely against Defendants Williams and Ward. Accordingly, the

---

[6] Notably, despite his being listed as a defendant in the caption of the Complaint, neither Count II nor any other part of the Complaint alleges any specific action (or inaction) on the part of Employee Defendant Allen. (See generally Doc. 1-1.) Indeed, the only mention of him in the Complaint is found at Paragraph 6, which alleges a jurisdictional basis for suit against the Georgia State Prison and states that the entity may be served via personal service on "the Chief Executive Officer…, Warden Marty Allen . . . ." (Id. at p. 6.)

Court will once again address the viability of Plaintiff's § 1983 claim as to each category of Defendants.

### A. State Agency Defendants

As an instrumentality of the State of Georgia, a suit against Georgia Department of Corrections, the Board of Regents of the University System of Georgia, Georgia Correctional Healthcare, Georgia State Prison, and Georgia Department of Behavioral Health and Developmental Disabilities would be the same as a suit against the State of Georgia. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98–100 (1984)). A lawsuit against a state agency or employee in its official capacity is no different from a suit against a state itself; such a defendant is immune. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that the state and its "arms" are not "persons" amenable to suit under Section 1983).

In enacting Section 1983, Congress did not intend to abrogate "well-established immunities or defenses" under the common law or the Eleventh Amendment. Id. at 67. Arms or agencies of the state, such as the State Agency Defendants, are therefore immune from suit. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Pugh v. Balish, 564 F. App'x 1010, 1013 (11th Cir. 2014) ("In addition, the Eleventh Amendment bars [plaintiff's] claims against the [superior court judge], since [plaintiff] is suing a state official, in federal court, for damages resulting from actions taken by the judge in his

official capacity."); Stevens, 864 F.2d at 115 (Georgia Department of Corrections is barred from suit by Eleventh Amendment).

For these reasons, to the extent Plaintiff intended to seek redress against the State Agency Defendants via 42 U.S.C. § 1983, she is precluded from doing so. The State Agency Defendants are entitled to judgment in their favor as to Count II of Plaintiff's Complaint.

### B. Employee Defendants

#### (1) Official Capacities

It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will, 491 U.S. at 71 (citation omitted). Insofar as she intended to do so, Plaintiff cannot assert 42 U.S.C. § 1983 claims against the Employee Defendants in their official capacities for the reasons discussed above in "Discussion" Section II(A).

#### (2) Individual Capacities

The parties' briefs indicate that Plaintiff did intend to bring a claim against the Employee Defendants in their individual capacities. (Docs. 7, 11.) The Employee Defendants contend the claim must be dismissed because: (1) Plaintiff fails to allege facts that amount to a constitutional violation, and (2) Plaintiff cannot demonstrate that the law was clearly established at the time the incident occurred, entitling them to qualified immunity. (Doc. 7-1, pp. 8–12.) In response, Plaintiff argues she has a viable substantive due process claim because her Complaint "contains several factual allegations that show . . . conscience shocking behavior," and further asserts that qualified immunity is improper because such behavior is clearly-established as violative of the Constitution. (Doc. 11, pp. 5, 8.) The Court must therefore determine "whether the alleged

11

facts, if true, would amount to a constitutional violation." Nix v. Franklin Cty. Sch. Dist., 311 F.3d 1373, 1377 (11th Cir. 2002).

To prevail on a claim of a substantive due process violation, a plaintiff must prove that a defendant's conduct "shocks the conscience." Id. The meaning of "conscience shocking" is "somewhat nebulous," but the Supreme Court has articulated a spectrum for lower courts to utilize when analyzing a new set of facts. Nix, 311 F.3d at 1375; see also County of Sacramento v. Lewis, 523 U.S. 833, 834 (1998) ("[T]he need to preserve the constitutional proportions of substantive process demands an exact analysis of context and circumstances before deliberate indifference is condemned as conscience shocking."). Actions by government officials "deliberately intended to injure in some way unjustifiable by any government interest" are more likely to rise to the "conscience-shocking level," while "[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold." Id. at 834.

Plaintiff claims the Employee Defendants were deliberately indifferent to the security risk posed by their failure to adequately staff the medical wing, and this deliberate indifference "created a reckless and intentionally injury-causing state action which shocks the conscience." (Doc. 11, p. 3.) The Supreme Court considered and rejected this type of argument in Collins v. City of Harker Heights, Tex., when a plaintiff argued that a government employer had a constitutional obligation to provide its employees with certain minimal levels of security after a sanitation worker suffocated while working on a sewer line. 503 U.S. 115 (1992). In the unanimous opinion, the Court noted the marked difference between non-custodial, consensual employment and custodial, involuntary confinement or incarceration, and explained that:

> [This] claim is analogous to a fairly typical state-law tort claim: The city breached its duty of care to [Plaintiff's] husband by failing to provide a safe work environment. Because the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries

> that attend living together in society, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law. The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship.

Collins, 503 U.S. at 128 (internal quotations and citations omitted).

After Collins, the Eleventh Circuit affirmed the dismissal of a substantive due process claim with facts almost identical to the case at hand. In White v. Lemacks, two women were attacked by an inmate while performing their nursing duties at a jail. 183 F.3d 1253 (11th Cir 1999). Like Ms. Butler, the plaintiffs in White argued the defendants did not take adequate security measures to prevent such attacks which proved their deliberate indifference to the nurses' safety. Id. The court rejected this argument and emphasized that plaintiffs "did not allege that the defendants had intended to harm them . . . ." Id. at 1258. Additionally, the Eleventh Circuit indicated that "when someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause," and an employer's "indifference in the context of routine decisions about employee or workplace safety cannot carry a plaintiff's case across [this] high threshold" without allegations of intentional, deliberate conduct. Id.

Examining the present case in light of this binding precedent, the Court finds that Plaintiff has not alleged facts to support a viable substantive due process claim. As Plaintiff correctly noted, she was not in a custodial relationship with any of the Defendants, and the pleaded facts do not support her conclusion that the Employee Defendants' behavior was "conscience shocking" or "deliberately indifferent." (Doc. 11, p. 5.) The allegations in Plaintiff's Complaint similarly do not show the Employee Defendants intended to cause her harm or that they knew of and disregarded an "excessive—that is, an extremely great—risk to

the victim's health or safety." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1306 (11th Cir. 2003). While the Employee Defendants may have been negligent in their staffing decisions at the time of Ms. Butler's attack, "a showing of negligence is insufficient to make out a constitutional due process claim." Id. at 1305 (citing Lewis, 523 U.S. at 834).[7] Accordingly, the Employee Defendants are entitled to judgment in their favor as to Count II of Plaintiff's Complaint.

## III. Punitive Damages

In "Count III" of her Complaint, Plaintiff asserts a vague, two-paragraph claim for punitive damages "against Defendants for their actions and inaction." While litigants may assert claims for punitive damages pursuant to Georgia law, O.C.G.A. § 51-12-5.1(b), punitive damages are also available under § 1983. Here, Plaintiff neglects to indicate which law or laws entitle her to such damages.[8] Under Georgia law, a claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach; punitive damages may not be recovered if there is no entitlement to compensatory damages. O.C.G.A. § 51-12-5.1(b). See J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 449 (Ga. Ct. App. 2007). Similarly, "a plaintiff in a § 1983 suit cannot recover punitive damages unless he first demonstrates that he has been deprived of a right secured by the Constitution or laws of the United States." Curves, LLC v. Spalding County, No. 3:07-CV-10-JTC, 2010 WL 11507905, at

---

[7] Because the Court finds Plaintiff does not allege a substantive due process claim, the Court need not decide whether the officers were entitled to qualified immunity. See Dalrymple v. Reno, 334 F.3d 991, 997 (11th Cir. 2003). However, even if there had been a viable claim, the Employee Defendants would be entitled to qualified immunity. Without any cases holding an employer liable under the Constitution for a decision that unintentionally caused third-party harm, the law could not have been "clearly established." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[8] As this is one of several obfuscating aspects of the Complaint, the Court reminds Plaintiff's counsel that "[t]he burden is not on the court to connect the links in the logical chain of a would-be argument where no actual argument is made." Gordon v. United States, No. 2:15-cv-758-MHT-SRW, 2016 U.S. Dist. LEXIS 118364, at *31-32 (M.D. Ala. Aug. 31, 2016).

14

*7 (N.D. Ga. July 23, 2010), aff'd Curves, LLC v. Spalding County, 685 F.3d 1284 (11th Cir. 2012).  For the reasons discussed supra, Plaintiff cannot assert claims against Defendants under Georgia law or 42 U.S.C. § 1983.  Without any remaining underlying claims, Plaintiff is not entitled to punitive damages.

## IV. Expenses of Litigation Under O.C.G.A. § 13-6-11

Plaintiff also requests attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11.  Like a claim for punitive damages, a claim for attorney's fees requires a viable underlying claim, which Plaintiff lacks.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004) (citing United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601 (Ga. 1996)).  Accordingly, Plaintiff is not entitled to attorney's fees.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Georgia Department of Corrections, the Board of Regents of the University System of Georgia, Georgia Correctional Healthcare, Georgia State Prison, and Georgia Department of Behavioral Health and Developmental Disabilities' Motion for Judgment on the Pleadings, (doc. 4), and **GRANTS** Defendants Marty Allen, individually and as the Warden of Georgia State Prison, Stanley Williams, and Timothy Ward's Motion for Judgment on the Pleadings, (doc. 7).  The Court **DIRECTS** the Clerk of Court to enter judgment for all Defendants and to close this case.

**SO ORDERED**, this 21st day of December, 2018.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

15